In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3918

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS L. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 785-1—**David H. Coar,** *Judge.*

ARGUED MAY 16, 2003—DECIDED OCTOBER 20, 2003

Before FLAUM, *Chief Judge*, and EASTERBROOK, and
ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* A jury found Thomas Johnson
guilty of conspiring to produce and transfer fraudulent
social security cards. Two of those cards were later used by
associates of Johnson's in various bank fraud schemes. The
district court found that Johnson was involved in the later
bank fraud schemes, but held that his participation in those
acts did not meet the definition of relevant conduct as set
forth in the United States Sentencing Commission Guide-
lines (U.S.S.G.). The district judge concluded, nevertheless,
that Johnson's activities in and around the bank fraud
warranted a ten-level upward departure. Because we find

that the district court applied the incorrect definition of relevant conduct, we remand for re-sentencing.

## I.

A jury convicted Thomas Johnson of conspiring with an employee of the Social Security Administration (SSA) to produce and transfer unauthorized Social Security cards. As part of the scheme, Johnson would call his co-conspirator at the SSA, and she would set in motion the process of issuing replacement cards and then mailing those cards to Johnson's home address.

Of the approximately thirty replacement cards that Johnson procured, two are most relevant to the current appeal. One, issued in March 1997 in the name of "J. G.,"[1] a child born in September 1992, wound up in the hands of Eugene Harris. Another, issued in the name "R.C.," a child born in November 1995, went to Lamar Burks. We do not know precisely how Harris and Burks obtained their cards—whether Johnson sold them the cards, gave them away, or provided them as a part of a conspiracy to commit further offenses. Both Harris and Burks used their respective fraudulent social security cards to obtain Illinois state identification cards and then to open bank accounts using fraudulent identification. Using his J.G. identification card, Harris opened an account at U.S. Bank in Tinley Park, Illinois in the name of Hewitt & Associates. He gave Johnson's home telephone number as the business number for Hewitt & Associates. Burks opened two bank accounts using his R.C. identification card. The first he opened at First Suburban National Bank in Alsip, Illinois, where he indicated in his account application that he was an accoun-

---

[1] We have opted to use the initials of the minors in order to limit further intrusion on their privacy.

tant with Hewitt & Associates, the same fraudulent business name that Harris had used. Burks opened the second account at Mutual Bank in Harvey in the name of Brady USA Telemarketing, and listed R.C. as the signatory. In May, 1997, shortly after both bank accounts had been established, Johnson and Burks (the latter using the name R.C.) traveled together to Atlantic City. While there, Burks attempted to cash a $130,000 check payable to Brady USA Telemarketing. Johnson and Burks were arrested in Atlantic City. Police searching Johnson's apartment found a copy of the Cook County Vital Statistics form that Harris and Burks had used in their fraud schemes as well as a color copy of Burk's driver's license. Various phone records linked Johnson to Harris and to one of the banks.

After a four day trial, a jury found Johnson guilty of one count of conspiring to unlawfully produce and transfer approximately thirty replacement social security cards and two counts of unlawful production and transfer of the replacement social security cards—one for the J.G. card and the other for the R.C. card.

At the sentencing proceedings, the court found, by a preponderance of evidence, that Johnson was involved in the bank fraud schemes involving Harris and Burks. After reviewing § 1B1.3 of the sentencing guidelines (U.S.S.G. § 1B1.3(2000))[2], however, he concluded that Johnson's involvement in the bank fraud scheme did not constitute relevant conduct as he interpreted the definition within the guideline. Nevertheless, he concluded that Johnson's involvement in the bank fraud scheme should be accounted for in his sentence, that the guidelines did not adequately

---

[2]  All references, unless otherwise noted are to the 2000 edition of the Guidelines Manual. U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.")

take into consideration Johnson's conduct and that, consequently, an upward departure would be the appropriate way to account for Johnson's participation in the bank fraud scheme. The court departed upward by ten levels— increasing Johnson's sentence by the same amount it would have been increased had the conduct been included as relevant conduct. Johnson appeals his sentence.

## II.

At sentencing and now on appeal, Johnson objected to the ten-level upward departure. According to Johnson, once the district court found that the acts of bank fraud did not constitute relevant conduct, the judge could not then rely on those same acts to make an upward departure. Such a back door approach, he argues, undermines the Commission's determinations of when to hold a defendant accountable for acts for which he has not been convicted. The Government's position, on the other hand, is that the guidelines allow and indeed encourage just the type of departure made in this case. In the alternative, the Government argues that the district court misread the guideline on relevant conduct and, had it read the guideline correctly, it would have found that Johnson's participation in Harris' and Burks' bank fraud was indeed relevant conduct and could be accounted for in his sentence in that manner. The resulting sentence, the Government argues, would be the same under either scenario.

We must begin, as the district court did, with guideline § 1B1.3 pertaining to relevant conduct. There are two different parameters for relevant conduct within § 1B1.3. The first defines relevant conduct as acts and omissions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). The second, applicable to

groupable offenses, defines relevant conduct as acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* at § (a)(2). Our first order of business is to determine whether the district court properly interpreted the relevant conduct guideline and applied the correct definition. The Government argues that the district court applied the first definition when it should have applied the second, and Johnson's counsel conceded in oral argument on appeal that he could not defend the district court's interpretation of the guideline. We review the district court's interpretation of this guideline *de novo. U.S. v. Bahena-Guifarro,* 324 F.3d 560, 562 (7th Cir. 2003).

As the commentary to the sentencing guidelines points out, at sentencing a defendant may be held accountable for more acts and omissions than just those for which he has been found criminally liable. U.S.S.G. § 1B1.3, cmt. n.1. The relevant conduct sentencing guideline provision directs a court to sentence a defendant for uncharged conduct which is germane to the offense for which he has been charged. *U.S. v. Jones*, 313 F.3d 1019, 1023 (7th Cir. 2002). Guideline 1B1.3, which follows, enunciates the parameters for determining when conduct is relevant to the charged offense:

§1B1.3. Relevant Conduct (factors that determine the guideline range)

(a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

(b) Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence). Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

At sentencing, the Government maintained that the bank fraud constituted relevant conduct under § 1B1.3(a)(2). This section forms the keystone of the debate in this case and for this reason we parse its language carefully. Section (a)(2) of this guideline applies to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." U.S.S.G. § 1B1.3(a)(2). Section 3D1.2(d) requires grouping of multiple counts when "the offense level is determined largely on the basis of the total amount of harm or loss." U.S.S.G. § 3D1.2(d). Johnson was convicted of Social Security fraud and therefore his sentence fell under U.S.S.G.

§ 2F1.1, a sentencing guideline in which the offense level is determined largely on the basis of the total amount of harm or loss. U.S.S.G. § 2F1.1 (including a table that sets the offense level based on the dollar amount of loss). There is no question, therefore, that § 1B1.3(a)(2) is applicable in the instant case.

Section 1B1.3(a)(2) then states that relevant conduct includes "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The district court held that section (a)(2)'s reference to sections (a)(1)(A) and (a)(1)(B) also incorporated the trailing clause of the entire (a)(1) section. (Tr. 10/12/01 at 82). In other words, he concluded that in order to constitute relevant conduct, the conduct must have occurred "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.*; § 1B1.3(a)(1). Because the bank fraud did not occur during the commission of the social security fraud, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for the Social Security fraud, the district court concluded that Johnson's actions did not constitute relevant conduct for purpose of this guideline.

The district court's reading of subsection (a)(2), however, creates unnecessary confusion in the statute. Under this interpretation, when faced with a groupable offense, a court would not know whether relevant conduct consisted of actions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" as described in the trailing clause of § (a)(1) or whether relevant conduct included all actions "that were part of the same course of conduct or common scheme or plan as the offense of conviction," as described in § (a)(2).

The confusion is readily resolved by our holding that the reference to subsections (1)(A) and (1)(B) in U.S.S.G. § 1B1.3(a)(2) refers only to the subsections themselves and not the trailing clause. In other words, in the context of a groupable offense, when evaluating whether some action constitutes relevant conduct, a court must look to see whether the acts and omissions "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

The district court's confusion was not entirely unwarranted, as this court has not before explicitly held that the trailing clause of § (a)(1) is not incorporated in § (a)(2). We have noted before that the definition of relevant conduct applicable to groupable offenses is the language of § (a)(2) involving "the same course of conduct or common plan or scheme" and not the language of (a)(1) involving activities which occurred during the commission of, in preparation for, or in the course of attempting to avoid detection or responsibility for an offense. *See e.g. U.S. v. Schaefer*, 291 F.3d 932, 939, n.5 (7th Cir. 2002) (in the case of groupable counts, § 1B1.3(a)(2) applies and includes as relevant conduct "all acts or omissions . . . that were part of the same course of conduct or common scheme or plan," and not 1B1.3(a)(1)), *U.S. v. Polichemi*, 219 F.3d 698, 713 (7th Cir. 2000) (when sentencing for money laundering, a groupable offense, a court must look to see whether a defendant's actions were part of the "same course of conduct or common scheme or plan").

That this is the correct interpretation also becomes clear when looking at guideline 1B1.3 as a whole. Subsection (a)(2) of the guideline specifically incorporates (a)(1)(A) and (a)(1)(B) but says nothing about the trailing clause. In contrast, subsection (a)(3) of the guideline refers to all of (a)(1) and not merely subsections (a)(1)(A) and (a)(1)(B). From this variation in the language, we must assume that the Sentencing Commission meant to include the trailing

clause in subsection (a)(3) but not in subsection (a)(2). *See Barmes v. United States*, 199 F.3d 386, 389 (7th Cir. 1999) ("Different language in separate clauses in a statute indicates Congress intended distinct meanings."). Consequently, the trailing clause of § (a)(1) is not applicable in the case of a groupable offense like the one at issue here.

Subsection (a)(2) allows a court to consider a broader range of conduct than does the trailing clause of (a)(1). U.S.S.G. § 1B1.3, cmt. background. Nevertheless, it does not open the door for a court to consider every act or omission of the defendant no matter how unrelated. The commentary instructs that "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *Id.* at n.9(A). In order to constitute the same course of conduct, the offenses must be

> sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.

*Id.* at n.9(B).

The district court judge did not consider any of these factors (he need not have, given his interpretation—which we now hold was in error—that the conduct had to have occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense). Whether uncharged offenses are part of the same course of conduct or common plan or scheme as the offense of conviction is a factual determination, s*ee U.S. v. Acosta,* 85 F.3d

275, 279 (7th Cir. 1996), and should, therefore, be made by the district court. For this reason, we remand this case to the district court with instructions to consider whether Johnson's involvement in Harris' and Burks' acts of bank fraud was, for the purposes of determining Johnson's sentence, "relevant conduct" as defined by U.S.S.G. §1B1.3(a)(2)—that is, whether it was part of the same course of conduct or common scheme or plan as the Social Security Fraud for which he was convicted.

As for the propriety of the upward departure, Johnson urges us to hold that a district court may not make an upward departure based upon acts or omissions that do not constitute relevant conduct. Johnson's concern is that the district court was rejecting the guidelines' limits on relevant conduct and engaging in real offense sentencing.

The Sentencing Guidelines explain that, "[o]ne of the most important questions for the Commission to decide was whether to base sentences upon the actual conduct in which the defendant engaged regardless of the charges for which he was indicted or convicted ("real offense" sentencing), or upon the conduct that constitutes the elements of the offense for which the defendant was charged and of which he was convicted ("charge offense" sentencing)." U.S.S.G. ch.1, pt. A, 4(a). Having pondered the matter, the Commission rejected a pure real offense system and, instead, selected a charge offense system with some elements of real offense sentencing. *Id.* In short, where the Commission intended for judges to consider actual conduct instead of charged conduct, it made its intention clear within the guidelines. The Sentencing Commission also designed a sentencing scheme where departures would be "rare occurrences" used only for unusual cases outside the range of the more typical offenses for which the guidelines were designed. *Id.* ch.1, pt. A, 4(b). We are indeed wary of district court sentences that intentionally or unintentionally incorporate real offense sentencing where the Commission

intended to apply charge offense sentencing only. *See U.S. v. Rogers*, 270 F.3d 1076, 1083 (7th Cir. 2001) (where the guidelines limit a court to charge offense sentencing, those limits must be respected).

Whether Johnson's conduct involves an aggravating factor "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," (18 U.S.C. § 3553(b); U.S.S.G. ch 1, pt. A, 4(b)), is a question for another day. Because the district court misinterpreted the guideline on relevant conduct, we need not decide whether the departure was improper. Instead, we vacate the sentence and remand to the district court to apply the sentencing guidelines in a manner consistent with this opinion.

VACATED AND REMANDED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*