**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Anthony ASHFORD, a/k/a Pop–**
**A–Lot, Defendant–Appellant.**

**No. 12–4477.**

United States Court of Appeals,
Fourth Circuit.

Argued: March 22, 2013.

Decided: June 20, 2013.

**ARGUED:** Kimberly Harvey Albro, Office of the Federal Public Defender, Columbia, SC, for Appellant. Robert Frank Daley, Jr., Office of the United States Attorney, Columbia, SC, for Appellee. **ON BRIEF:** Allen B. Burnside, Assistant Federal Public Defender, Office of the Federal Public Defender, Columbia, SC, for Appellant. William N. Nettles, United States Attorney, Stacey D. Haynes, Assistant United States Attorney, Office of the United States Attorney, Columbia, SC, for Appellee.

Before DUNCAN and DIAZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge DIAZ wrote the opinion, in which Judge DUNCAN and Senior Judge HAMILTON joined.

DIAZ, Circuit Judge:

Pursuant to a guilty plea, a federal district court convicted James Ashford of illegal possession of a firearm under 18 U.S.C. §§ 922(g)(1), 924(a)(2). Because Ashford had used the firearm on the day of his arrest to shoot another person, the district court applied a "cross reference" under § 2K2.1(c) of the United States Sentencing Guidelines ("USSG") and substituted the offense level for attempted second-degree murder.

Ashford appeals, posing two claims of error—one legal, one factual—regarding the application of that cross reference. First, Ashford contends that attempted second-degree murder was not a proper cross reference because as a non-groupable offense under USSG § 3D1.2, it is categorically excluded from the "Relevant Conduct" Guideline of USSG § 1B1.3(a)(2). Second, Ashford argues that the facts elicited at sentencing did not establish the requisite "malice" to substantiate the attempted commission of second-degree murder.

For the reasons set forth below, we affirm.

## I.

### A.

The relevant events concern an altercation at an apartment complex in Columbia, South Carolina, between two couples: James Ashford and his girlfriend Elicia Jackson, and Marcus Chaplin and his girlfriend Takeya Lake. The dispute began on the morning of April 20, 2011, after Jackson learned that Chaplin had told her family members she had been arrested for shoplifting. Jackson confronted Chaplin about the comments, and the two argued until Ashford intervened. Ashford and Chaplin then discussed the matter and conciliated, as did their respective girlfriends later that day, who decided to "let it go." J.A. 274. As far as Chaplin and Lake were concerned, therefore, the matter was "squashed." J.A. 57.

For reasons not evident from the record, however, the dispute escalated. Ashford subsequently ventured across town to retrieve his .38 caliber revolver, which as a convicted felon he possessed illegally. When Ashford returned, he sported the revolver about the apartment complex and "told a couple of people that the gun was for [Chaplin]." J.A. 58. Lake relayed Ashford's threats to Chaplin, who then returned to the apartment complex. By the time Chaplin returned, Ashford had

left to visit the local store. Chaplin, joined by his cousin Tevin Richardson, decided to pursue Ashford—purportedly to resolve the dispute away from the presence of children who were playing at the apartment complex.

Chaplin and Richardson caught up with Ashford in a narrow alleyway between the store and the apartment complex. After a short confrontation, Ashford drew his firearm, at which point Chaplin and Richardson retreated to a vehicle at the apartment complex. Ashford pursued Chaplin, who pushed a young girl away from his car and told her to go inside. Chaplin then opened the passenger side door and "reached in" to grab a firearm in the glove compartment. J.A. 215. However, Chaplin did not retrieve the weapon, and informed Ashford he was unarmed.

Ashford then stated "I should kill you," J.A. 74, and fired three shots. The first shot struck Chaplin in the groin, the second struck Chaplin's buttocks as he turned to flee, and the third missed. The wounded Chaplin stumbled before sitting down on the sidewalk. Ashford recalled that he was "not angry," but "scared" when he shot Chaplin. J.A. 219. After the initial gun fire, Lake retrieved Chaplin's firearm from the vehicle, which, in turn, prompted Ashford to fire two errant shots at Lake. Ashford then asked a neighbor to drive him away from the scene. However, the police stopped the car, arrested Ashford, and seized the firearm.

### B.

Ashford pleaded guilty to illegally possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The presentence investigation report ("PSR") calculated a Guidelines range of the statutory maximum—120 months—based on a cross reference to attempted first-degree murder under USSG § 2K2.1(c). Ashford objected to the cross reference. Following a hearing, the court adopted the facts in the PSR and concluded that the appropriate cross-referenced offense was attempted second-degree murder—resulting in a Guidelines range of 110–120 months' imprisonment. The court sentenced Ashford to 120 months. Ashford now appeals.

### II.

### A.

■ We first consider the appropriate standard of review. Ordinarily, when "determining whether a district court properly applied the advisory Guidelines," including its application of a cross reference, "we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Layton,* 564 F.3d 330, 334 (4th Cir.2009) (emphasis omitted). Just days before oral argument, however, the government filed a letter pursuant to Federal Rule of Appellate Procedure 28(j), which permits the submission of supplemental authorities, asserting that Ashford waived the issue of whether USSG § 1B1.3(a)(2) prohibits a cross reference to a non-groupable offense.

■ We decline this eleventh-hour request to review Ashford's claim for plain error, as the government itself failed to raise any such argument in its opening brief. Regardless of whether a party may truly "waive[ ] waiver," *United States v. Cone,* 714 F.3d 197, 224 (4th Cir.2013) (Wynn, J., concurring in part and dissenting in part), we exercise our discretion in this case to excuse any supposed waiver by Ashford. *See United States v. Holness,* 706 F.3d 579, 592 (4th Cir.2013) ("Thus, we possess the discretion under appropriate circumstances to disregard the parties' inattention to a particular argument or issue.").

We do not countenance a litigant's use of Rule 28(j) as a means to advance new arguments couched as supplemental authorities. "Indeed, considering an argument advanced for the first time in a Rule 28(j) filing is not only unfair to the appell[ant], it also creates the risk of an improvident or ill-advised opinion being issued on an unbriefed issue." *United States v. Leeson*, 453 F.3d 631, 638 n. 4 (4th Cir.2006). Here the late timing of the government's Rule 28(j) letter prevented Ashford from contesting the government's waiver argument, and under these circumstances waiver must be a two-way street. In fact, we have identified "procedural ambush" as a scenario that warrants an exception to the rules of waiver. *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir.1984). Accordingly, in the interests of fairness and the integrity of the Federal Rules of Appellate Procedure, we reject the government's plain error argument and review Ashford's first claim of error de novo.

### B.

■ In the event of a conviction for illegal possession of a firearm, USSG § 2K2.1(c) authorizes a district court to substitute the offense level for any criminal offense that the defendant committed or attempted to commit in connection with the possession of the firearm. This "cross reference" may only apply if the underlying offense qualifies as "relevant conduct" as defined by USSG § 1B1.3(a). *See United States v. Pauley*, 289 F.3d 254, 258 (4th Cir.2002). USSG § 1B1.3(a) provides that cross references "shall be determined on the basis of the following:"

(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) *solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts*, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

USSG § 1B1.3(a) (emphasis added).

■ Ashford maintains that all four subsections must apply to sustain a cross reference. Because USSG § 3D1.2 expressly excludes crimes against the person from grouping, including attempted murder, Ashford contends that USSG § 1B1.3(a)(2) is not satisfied, and the district court should not have applied a cross reference. The government, however, reads the four subsections disjunctively. In other words, a cross reference may apply either to a non-groupable offense committed "during the commission of the offense of conviction" under USSG § 1B1.3(a)(1), or to a groupable offense committed within "the same course of conduct or common scheme

or plan as the offense of conviction" under USSG § 1B1.3(a)(2). Because the attempted murder occurred on the same day using the very firearm that Ashford had illegally possessed, the government contends that this non-groupable offense satisfies—and need only satisfy—subsection (a)(1) of the Relevant Conduct Guideline.

"We interpret the Sentencing Guidelines according to the ordinary rules of statutory construction." *United States v. Strieper,* 666 F.3d 288, 293–94 (4th Cir. 2012). "As in all cases of statutory interpretation, our inquiry begins with the text of the statute." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.,* 401 F.3d 274, 279 (4th Cir.2005). "We determine the plainness or ambiguity of the statutory language . . . by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *United States ex rel. Carter v. Halliburton Co.,* 710 F.3d 171, 189 (4th Cir.2013) (internal quotations omitted). "[W]here the statutory language is ambiguous we turn to other evidence to interpret the meaning of the provision," *Johnson v. Zimmer,* 686 F.3d 224, 236 (4th Cir.2012), including the Sentencing Guidelines commentary. *See United States v. Divens,* 650 F.3d 343, 346 (4th Cir.2011) (citing *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)).

Applying these principles, we observe that the text of USSG § 1B1.3(a) indeed connects subsections (3) and (4) with the word "and," suggesting that a district court must apply all provisions in order to impose a cross reference. Despite the conjunction, however, subsections (a)(3) and (a)(4) do not logically constitute additional conditions of some four-part test for cross-referenced offenses. Rather, those provisions merely supplement the district court's consideration of the two antecedent subsections.

In our view, there is no reason why the Guidelines would exclude all non-groupable offenses from serving as cross references when such acts are committed "during the commission" of the offense of conviction under subsection (a)(1). As we explained in *United States v. Horton,* 693 F.3d 463, 476 (4th Cir.2012), "Subsection (a)(1) of the Relevant Conduct Guideline requires a closer connection between the acts and omissions committed and the offense of conviction than does Subsection (a)(2)." As the Relevant Conduct Guideline concerns criminal acts that have a factual contiguity to the offense of conviction, there is no reason to require acts that satisfy this requirement to also satisfy the less proximate criteria for relevant conduct under subsection (a)(2). *See United States v. Johnson,* 347 F.3d 635, 640 (7th Cir. 2003) ("[T]he trailing clause of § (a)(1) is not applicable in the case of a groupable offense. . . . Subsection (a)(2) allows a court to consider a broader range of conduct than does the trailing clause of (a)(1).").

Moreover, the guideline that authorizes a cross reference in this case directs courts to apply a homicide guideline "if death resulted" from the cross-referenced offense. See USSG § 2K2.1(c)(1)(B). This provision would make no sense if, as Ashford argues, homicide crimes are ineligible for cross references as non-groupable offenses under USSG § 1B1.3(a)(2).

Just as the purpose of the Relevant Conduct Guideline and the language of USSG § 2K2.1(c)(1)(B) militate against a conjunctive reading, there are also multiple provisions in the commentary to USSG § 1B1.3 that confirm that the Relevant Conduct Guideline should be read disjunctively. First, the commentary states that "[i]n certain cases, a defendant may be

accountable for particular conduct under more than one subsection of this guideline." USSG § 1B1.3 cmt. n. 2(a)(1). Second, the commentary distinguishes "Subsections (a)(1) and (a)(2)" as "different rules." *Id.* cmt. background. Finally, the commentary discusses certain "offense conduct" that is "relevant conduct under subsection (a)(1), not (a)(2)." *Id.* cmt. n. 8.

Taken together, these provisions demonstrate that USSG § 1B1.3(a)(1) and (a)(2) prescribe separate and sufficient conditions for relevant conduct. Indeed, the principal precedent cited by Ashford actually supports this reading. In *Horton*, a defendant convicted of illegal firearm possession was sentenced based on a cross reference to first-degree murder. 693 F.3d at 465. Because that offense, USSG § 2A1.1, was expressly excluded from grouping, we held that the cross reference under USSG § 1B1.3(a)(2) could not apply and vacated the sentence. *Id.* at 478–80. The corollary of this principle, however, is what we have hereto concluded—a non-groupable offense must instead satisfy the criteria of subsection (a)(1). In a footnote that Ashford characterizes as "dicta," Reply Br. at 12, *Horton* suggested as much by indicating that subsection (a)(1) is an alternative basis for relevant conduct. *See Horton*, 693 F.3d at 476 n. 13.

■ To the extent we need to affirmatively state that principle, we do so now.* Because a disjunctive interpretation of the Relevant Conduct Guideline "ensure[s] that the statutory scheme is coherent and consistent," *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir.2011), we agree with our sister circuits that a cross-referenced offense may satisfy *either* subsection (a)(1) or

(a)(2) of the Relevant Conduct Guideline. *See United States v. McCants*, 434 F.3d 557, 563 (D.C.Cir.2006); *United States v. Williams*, 431 F.3d 767, 772–73 (11th Cir. 2005); *Jansen v. United States*, 369 F.3d 237, 248 (3d Cir.2004); *Johnson*, 347. F.3d at 637–40; *United States v. Cuthbertson*, 138 F.3d 1325, 1327 (10th Cir.1998).

Accordingly, where the substituted offense would require grouping, subsection (a)(2) applies and "allows a court to consider a broader range of conduct than ... (a)(1)." *Johnson*, 347 F.3d at 640. But where, as here, a substituted offense cannot be grouped, the act must satisfy subsection (a)(1) and have "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). Because Ashford's substituted offense of attempted second-degree murder clearly occurred "during the commission" of the offense of conviction, the district court properly imposed a cross reference pursuant to USSG § 1B1.3 (a)(1).

## C.

■ We next address Ashford's secondary argument that even if a cross reference applies, the district court erred in determining the substituted offense. According to Ashford, the facts in the PSR failed to establish the elements of attempted second-degree murder, and at most substantiate a finding of attempted voluntary manslaughter. We review the factual findings of the district court for clear error and all legal conclusions de novo. *United*

---

\* Ashford also claims the district court erred by not specifying which provision of the Relevant Conduct Guideline justified the cross reference. Ashford though abandoned this claim by waiting until his reply brief to raise it. *Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001) (per curiam).

*States v. Medina–Campo,* 714 F.3d 232, 234 (4th Cir.2013).

 "Murder is the unlawful killing of a human being with malice aforethought," 18 U.S.C. § 1111, while "[voluntary] manslaughter is the unlawful killing of a human being without malice .... [u]pon a sudden quarrel or heat of passion." 18 U.S.C. § 1112(a). First-degree murder requires proof of premeditation, while second-degree murder simply requires proof of "malice aforethought, [which] may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Williams,* 342 F.3d 350, 356 (4th Cir.2003).

We have no trouble affirming the district court's decision on the facts of record. It was Ashford who reignited the dispute by driving across town to retrieve his revolver hours after the initial altercation that morning, and warning neighbors that he intended to use the firearm on Chaplin. Ashford then made good on his threat, telling Chaplin "I should kill you" before firing three shots, two of which hit Chaplin. Even if Chaplin shares some blame by virtue of his decision to confront Ashford in the alleyway, Ashford was "not angry" or in danger when he drew his firearm and pursued the fleeing Chaplin.

These facts exhibit the wanton behavior that warranted an inference of malice. There was nothing "sudden" about the quarrel, and the "heat of passion" mitigator plainly does not apply to an aggressor who is "not angry," and has multiple opportunities to walk away from a dispute that he incited.

Accordingly, the district court did not clearly err in imposing a cross reference to attempted second-degree murder.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*