**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4232**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

GARY GIOVON LYNN,

    Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:16-cr-00287-WO-1)

Argued:  September 26, 2018                     Decided:  January 7, 2019

Before MOTZ and FLOYD, Circuit Judges, and James P. JONES, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion.  Judge Jones wrote the majority opinion, in which Judge Motz joined.  Judge Floyd wrote a separate opinion, in which he concurred in part and dissented in part.

**ARGUED:**  John Arthur Duberstein, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Kimberly Furr Davis, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee.  **ON BRIEF:**  Louis C. Allen, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,

Greensboro, North Carolina, for Appellee.

_____

JONES, District Judge:

Gary Giovon Lynn pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(l), 924(a)(2). The district court sentenced Lynn to 120 months' imprisonment. On appeal, counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967), questioning whether the district court erred in applying a cross-reference to the attempted murder Sentencing Guideline. U.S. Sentencing Guidelines Manual (USSG) §§ 2A2.1, 2K2.1(c)(l)(A), 2X1.l(a) (2016). We directed supplemental briefing on the additional issue of whether in light of USSG § 5G3.1(c), the district court erred in failing to impose its sentence to run concurrently with an anticipated term of state imprisonment. We now affirm the district court's judgment.

I.

On January 4, 2016, Officer A.D. Gardner of the Winston-Salem Police Department stopped a speeding vehicle occupied by Lynn along with two other individuals. While standing near the vehicle, Officer Gardner smelled marijuana, and he requested additional officers for assistance. When the other officers arrived, Officer Gardner asked each of the occupants to exit the vehicle. After Officer Gardner frisked Lynn, Gardner instructed him to stand by a guardrail with the driver of the vehicle. As Officer Nicholas Powell was frisking another passenger, Lynn jumped into the driver's side of the vehicle and Officer Powell followed, landing on top of him. The two struggled over control of the vehicle, with Lynn putting the vehicle into drive, and Officer Powell pulling the emergency brake. The vehicle rolled away, and Officer Gardner pursued it. He heard a gunshot, and when he reached the vehicle, he saw Officer

3

Powell lying on top of Lynn and holding Lynn's left hand, in which Lynn had a pistol pointed at Officer Powell. Officer Powell had suffered gunshot wounds to his arms and chest. Lynn had also suffered a gunshot wound, although Officer Powell had not fired his weapon during the struggle.

Lynn was arrested and charged in state court with attempted first-degree murder, possession of a firearm by a felon, and fleeing or eluding arrest with a motor vehicle. While Lynn was detained in state custody, he was indicted on a federal charge of being a felon in possession of a firearm, stemming from the same conduct as the state charges. Lynn was obtained by the district court on a writ of habeas corpus ad prosequendum while his state charges were pending, and he eventually pleaded guilty to the federal firearms charge.

At Lynn's federal sentencing hearing on February 28, 2017, he and Officer Powell both testified about what had occurred in the vehicle. Officer Powell stated that after he had been able to bring the vehicle to a stop, Lynn dove between the front seats, and as Officer Powell had turned to face Lynn, he felt gun shots hit him. On the other hand, Lynn testified that he and Officer Powell had struggled over possession of the firearm, and it went off accidentally during the struggle. The district court found that Officer Powell's testimony was credible while Lynn's was not, and it determined that a sentence of 120 months' imprisonment —the statutory maximum—was appropriate.

The court also heard argument as to whether this sentence should run concurrently with or consecutive to Lynn's future anticipated state sentence. Because Lynn was in primary state custody, that state sentence would be served in its entirety before he entered

4

the federal prison system. The district court stated that it would be "terribly difficult" for it to calculate what portion, if any, of Lynn's sentence should run concurrently with his anticipated state sentence in light of the variety of state charges he faced, along with the dispute as to the facts surrounding the shooting. J.A. 153. The court explained:

> [L]et's say that a state court jury finds beyond a reasonable doubt . . . that there was a struggle and this constitutes some kind of aggravated assault. I'm not sure I would want this sentence to be imposed to run concurrently based on the facts that I found.
>
> On the other hand, if there's an attempted second degree murder conviction and some 288-month sentence is imposed, then I think, in fairness, the circumstances might merit some overlapping consideration, but I just don't know at this point.

J.A. 154. The court also suggested that, in light of its uncertainty regarding the extent to which its sentence should run concurrently with the anticipated state sentence, the state court could take the federal sentence into account in fashioning its sentence, and Lynn could also request the Bureau of Prisons (BOP) to designate the state prison as his place of confinement, thus effectively running his federal sentence concurrently with the state sentence. Ultimately, the court stated:

> I am not able to make a determination as to how much of this sentence should be imposed to run concurrently with the state court prosecution that is now pending. . . . Therefore, at this time I will decline to make a finding with respect to running any part of this sentence concurrently to any sentence imposed in the state court.

J.A. 159.

Thereafter, on May 4, 2017, Lynn pleaded guilty in North Carolina Superior Court to assault with a deadly weapon with intent to kill, inflicting serious bodily injury,

possession of a firearm by a felon, and fleeing or eluding arrest with a motor vehicle. The state court imposed a total sentence of 104 to 137 months' imprisonment.

## II.

### A.

Before resolving the issue that was the subject of supplemental briefing and oral argument, we can easily dispose of the question raised in the *Anders* brief.

We review a defendant's sentence "under a deferential abuse-of-discretion standard." *Gall v. United States,* 552 U.S. 38, 41 (2007). Under the *Gall* standard, a sentence is reviewed for both procedural and substantive reasonableness. *Id.* at 51. In determining procedural reasonableness, we consider, among other things, whether the court properly determined the Sentencing Guidelines range, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence. *Id.* at 49–51.

We review the factual findings underlying a district court's application of a Guidelines cross-reference for clear error and the court's legal conclusions de novo. *United States v. Ashford,* 718 F.3d 377, 380, 383–84 (4th Cir. 2013). "In the event of a conviction for illegal possession of a firearm, USSG § 2K2.1(c) authorizes a district court to substitute the offense level for any criminal offense that the defendant committed or attempted to commit in connection with the possession of the firearm." *Id.* at 381. Here, the district court found that Lynn committed attempted murder with the firearm at issue. Sentencing Guideline § 2A2.l(a) provides for a base offense level of 33 if the attempted murder would have constituted first-degree murder; otherwise, the offense level is 27. "[S]econd-degree murder simply requires proof of malice aforethought, which may be

6

established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *Ashford,* 718 F.3d at 384 (internal quotation marks, citation, and alterations omitted).

We conclude that the district court did not err in finding that the murder cross-reference applied. The district court based its ruling on finding that the victim's testimony was credible and that Lynn's testimony was not.

> [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*United States v. Hall,* 664 F.3d 456, 462 (4th Cir. 2012) (internal quotation marks and citation omitted). Moreover, ballistic evidence indicated that multiple shots were fired from Lynn's firearm and that more would have been fired had it not malfunctioned. The district court's decision not to credit Lynn's testimony is likewise supported by the record—the firing of multiple shots is arguably inconsistent with Lynn's explanation that the shooting was an accident.

B.

Relying on *Setser v. United States*, 566 U.S. 231 (2012), Lynn contends that the district court erred in declining to run its sentence concurrently, in whole or in part, with the yet-to-be-imposed state sentence. In light of the now-imposed state sentence, he seeks a remand for reconsideration of that issue by the district court.

7

In *Setser*, noting that sentencing judges "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings," *id.* at 236, the Court held that 18 U.S.C. § 3584(a) allows judges to impose a federal sentence concurrently or consecutively to an anticipated, but unimposed, state sentence, *id.* at 236–39.

The relevant Sentencing Guideline, added after *Setser* by USSG amendment 787, effective November 1, 2014, provides that if "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction . . . , the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." USSG § 5G1.3(c). There is no question but that Lynn's state charges were relevant conduct to his federal conviction. However, because the Guidelines are advisory, a district court is not obligated to impose a concurrent sentence pursuant to USSG § 5G1.3. *United States v. Nania*, 724 F.3d 824, 830 (7th Cir. 2013). Rather, the district court is required to consider the 18 U.S.C. § 3553(a) factors in determining whether to run sentences consecutively or concurrently. 18 U.S.C. § 3584(b).

Here the district court provided a thorough explanation of the sentence. The court found that Lynn's offense conduct was extremely serious. The court then explained that it would not order its sentence to run concurrently with the anticipated state sentence in light of this seriousness, remarking that a lengthy term of imprisonment was necessary in this case. The court recognized its discretion to order the sentence to run concurrently,

8

but simply declined to exercise its discretion after considering the required factors. Thus, we discern no abuse of discretion in the district court's decision. *See United States v. Hall,* 825 F.3d 373, 375–76 (8th Cir. 2016) (upholding decision not to run sentence concurrent to anticipated state sentence based on district court's consideration of the § 3553(a) factors and its explanation that the possibility of a relatively short state sentence that would result in an inappropriate period of imprisonment).

Lynn argues that by declining to order the sentence to run concurrently, the district court treaded on the separation-of-powers issue outlined in *Setser. See* 566 U.S. at 242–43. In holding that 18 U.S.C. § 3584(a) allows a district court to impose a federal sentence concurrently or consecutively to an anticipated state sentence, the Court in *Setser* rejected the parties' argument that when a future state sentence is anticipated, the BOP should decide after the federal sentence has been imposed whether it runs concurrently with or consecutive to the state sentence, based upon its authority granted under 18 U.S.C. § 3621(b).[1] The Court rejected this argument in part out of concern that it would leave sentencing in the hands of "the same Department of Justice that conducts the prosecution." *Setser*, 566 U.S. at 242. Instead, the Court determined that in the first instance, the district court, rather than the BOP, should decide whether a federal sentence runs concurrently with or consecutive to an anticipated state sentence. *Id.* at 242–43. However, recognizing an exception to this determination, the Court stated that "a district

---

[1] That statute provides that the BOP "may designate any available penal or correctional facility . . ., whether maintained by the Federal Government or otherwise . . ., that the Bureau determines to be appropriate and suitable." 18 U.S.C. § 3621(b).

9

court should exercise the power to impose anticipatory consecutive (or concurrent) sentences intelligently. In some situations, a district court may have inadequate information and may forbear, but in other situations, that will not be the case." *Id.* at 242 n.6.

Lynn's argument requires us to consider the boundaries of this exception—in what situations does a district court's lack of information permit it to decline to order its sentence to run concurrently with an anticipated state sentence? To be sure, these situations will be limited. When a state sentence is anticipated, the district court will normally lack definite information about that sentence, and if this alone were sufficient to permit the district court to forbear, the exception would swallow the rule. Thus, in most cases, the district court should decide whether its sentence will run concurrently with or consecutive to an anticipated state sentence involving relevant conduct. But as pointed out by the Sentencing Commission with regard to USSG § 5G1.3, "[d]etermining whether, and how, to use this discretion will depend on the adequacy of the information available." USSG Amend. 776 (Nov. 1, 2013).

It is clear that Lynn's case was not routine. First, the conduct at issue was extremely serious. As the district court stated, "this is . . . one of the most, if not the most, serious forms of a 922(g)(1) offense. The only thing more serious is a shooting in which an individual is actually killed." J.A. 158. Further, the variety of state charges against Lynn, along with his dispute as to the facts surrounding the shooting—in particular, his testimony that the shooting was accidental—made it possible for his anticipated state sentence to range from relatively short to over double his federal

sentence. The district court considered this possibility and the effect it would have on any concurrent sentence it might order, ultimately determining that the uncertainty it created prevented the court from accomplishing its proper sentencing objectives.

Of course, we know by now the sentence imposed on Lynn by the state court. But it was not unreasonable at the time of imposing sentence for the district court to have justified doubts as to the scope of that state sentence. As noted by the Court in *Setser*, the fact that the later state sentence may be unexpected, "does not establish that the District Court abused its discretion by imposing an unreasonable sentence." 566 U.S. at 244. The district court attempted to exercise its power to impose a concurrent or consecutive sentence intelligently, but, for the reasons discussed above, it lacked adequate information to do so. Accordingly, the district court did not err in declining to run its sentence concurrently with the anticipated state sentence.[2]

---

[2] Shortly before oral argument, the government submitted additional authority pursuant to Federal Rule of Appellate Procedure 28(j) and Local Rule 28(e), arguing that when Lynn agreed that his state court sentence "shall run consecutively to any other sentence the defendant is now subject to," Lynn waived the issues he raises on appeal, and any error by the district court must be disregarded. We disagree.

Lynn's agreement regarding his state court sentence has no effect on his federal sentence. As previously noted, Lynn was in primary state custody when he was sentenced on the federal charge, and as a result, he will serve his state sentence in its entirety before he serves his federal sentence. "In our American system of dual sovereignty, each sovereign—whether the Federal Government or a State—is responsible for the administration of its own criminal justice system." *Setser*, 566 U.S. at 241 (internal quotation marks, citation, and alterations omitted). "If a prisoner like [Lynn] starts in state custody, serves his state sentence, and then moves to federal custody, it will always be the Federal Government . . . that decides whether he will receive credit for the time served in state custody." *Id.* Thus, Lynn's state court sentence cannot run consecutively to his federal sentence, and the state court cannot dictate that his federal (Continued)

11

Our dissenting colleague parts company with us based upon the contention that the district court violated its procedural duty by failing to expressly accept or reject the advisory language of § 5G1.3(c). But the court satisfied its procedural duty when it considered the Guideline and fully explained its rationale for declining to exercise its discretion. For the reasons given above, we find that the district court's explanation given in this case was sufficient, and as authorized by *Setser*.

*AFFIRMED*

---

sentence will run consecutively to his state sentence. Accordingly, Lynn could not—and has not—waived his argument regarding his federal sentence.

FLOYD, Circuit Judge, concurring in part and dissenting in part:

I join with all parts of the majority opinion save one: I disagree with my colleagues' conclusion that the district court had the discretion to make no decision at all on whether Lynn's federal sentence would run concurrently with his anticipated state sentence. I would hold that because U.S.S.G. § 5G1.3 was a "pertinent Sentencing Commission policy statement," *United States v. Olmeda*, 894 F.3d 89, 93 (2d Cir. 2018) (quoting *United States v. Cavera*, 550 F.3d 180, 188–89 (2d Cir. 2008) (en banc)), the district court was required to decide whether to adopt § 5G1.3's recommendation that Lynn's sentences run concurrently. That is, the district court had the discretion either to follow or depart from the Sentencing Commission's recommendation on concurrency. But the district court did not have the discretion to make no decision on concurrency at all. Therefore, I respectfully dissent as to Part II.B of the majority opinion.

I.

Lynn's federal sentencing hearing took place before his pending state charges were resolved. During the sentencing, the government raised U.S.S.G. § 5G3.1(c) and its recommendation that Lynn's federal sentence run concurrently with his anticipated state sentence. Both government and defense counsel argued that § 5G3.1(c) applied and that at least a portion of Lynn's federal sentence should run concurrently with his anticipated state sentence.

In response, the district court stated that it was "terribly difficult" to calculate how much of Lynn's federal sentence should run concurrently with a yet-to-be-determined

13

state sentence. J.A. 153. The length of Lynn's future state sentence could vary widely, from a relatively short sentence for aggravated assault to a far longer sentence for attempted murder. Should Lynn receive a short sentence, the court was "not sure" that it wanted any of the federal sentence to be served concurrently with the state sentence. J.A. 154. If, however, Lynn received a long state sentence, the court believed that "in fairness, the circumstances might merit some overlapping" of the sentences. *Id.*

The district court then opined that it need not decide the § 5G3.1(c) question because "ultimately, the Bureau of Prisons has the authority to come back in and handle [this situation] through one of those retroactive designations." J.A. 153. When defense counsel expressed confusion regarding what the court meant by retroactive designations, the court replied: "When an individual does finally arrive at the Bureau of Prisons," meaning after the defendant has served his state sentence and is transferred to federal custody to serve his federal sentence for related conduct, "there is an administrative process where [offenders] can apply and ask for that overlap – the overlapping sentences to be taken into consideration and the Bureau of Prisons backdate the start of the federal sentence to some date during the state sentence that's been served." J.A. 156. When such a request is made, the district court continued, "I usually get a letter that asks for my position on that, and if it is truly a circumstance where there was overlapping conduct that enhanced both sentences, I usually tell that to the Bureau of Prisons, but I don't know what they do with that once I've made my comment." *Id.*

Ultimately, the district court declined to decide whether to apply § 5G3.1(c)'s recommendation that Lynn's sentences be served concurrently, stating:

14

I am not able to make a determination as to how much of this sentence should be imposed to run concurrently with the state court prosecution that is now pending. Certainly, to the extent Mr. Lynn was ultimately either found guilty or pled guilty to an attempted second-degree murder [in state court], there would be significant overlap between these two sentences that are imposed in this case, but, ultimately . . . should Mr. Lynn ultimately be convicted of a [weapons possession] offense or some other offense, I would not be inclined to run any of this sentence concurrent to the sentence that may be imposed in state court. Therefore, at this time I will *decline to make a finding with respect to running any part of this sentence concurrently* to any sentence imposed in the state court.

J.A. 159 (emphasis added). I thus disagree with my colleagues in the majority to the extent that they understand the district court's ruling as a decision to not adopt § 5G3.1(c)'s concurrency recommendation. Rather, we are faced here with a case in which the district court refrained from making any decision at all on a pertinent Sentencing Guideline.

## II.

The Bureau of Prisons' (BOP) role in making concurrency determinations serves as important background here. The BOP is empowered by statute to decide where federal inmates serve their sentences. 18 U.S.C. § 3621(b) (2012). When making that determination, the BOP may "designate any available penal or correctional facility that meets minimum standards . . . whether maintained by the Federal Government or otherwise." *Id*. Thus, "when a federal defendant is already serving a state sentence, BOP has the practical power to 'make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence.'" *Fegans v. United States*, 506 F.3d 1101, 1103 (8th Cir. 2007)

15

(quoting *Romandine v. United States*, 206 F.3d 731, 738 (7th Cir. 2000)). Congress's grant of power to the BOP to select a place of confinement for federal prisoners has therefore become a de facto power to determine whether a federal sentence will be served concurrently with a state sentence.

When a district court has made the concurrency determination already, the BOP enforces the court's order. *See* BOP Program Statement 5160.05 ¶ 7 ("When a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed, the Bureau implements such order or recommendation . . . ."); *Fegans*, 506 F.3d at 1105. When, however, a federal judge fails to make a concurrency determination, the BOP refers to 18 U.S.C. § 3584(a), which states:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . . Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

*See Mangum v. Hallembaek*, 824 F.3d 98, 101–02 (4th Cir. 2016) (explaining the BOP's reliance on 18 U.S.C. § 3584). Hence, when a district court is silent as to whether a sentence should be served concurrently with or consecutively to another sentence, the BOP uses § 3584(a) to fill in the gaps.

The plain text of § 3584(a), however, contains its own gap: It says nothing about whether a district court may order a federal sentence to be served concurrently with a yet-

16

to-be-imposed state sentence.[1]  After § 3584(a) was enacted, some circuits interpreted that gap to mean that district courts *could not* order a federal sentence to be served concurrently with a yet-to-be-imposed state sentence.  *See Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75–76 (2d Cir. 2005) (collecting cases); *Fegans*, 506 F.3d at 1104 (noting existence of circuit split).  In those circuits, a pragmatic problem arose: once the state sentence was imposed, who *could* decide whether the federal sentence would run concurrently or consecutively?  The Third Circuit was the first to address that question and held that the BOP should fill this void by reviewing applications from prisoners who had been transferred to federal custody after serving a state sentence, and then deciding whether the federal sentence should run concurrently or consecutively with the state sentence through a *nunc pro tunc* designation.  *Barden v. Keohane*, 921 F.2d 476, 480–81 (3d Cir. 1990).  Subsequently, multiple federal courts of appeals followed the Third Circuit's lead.  *Fegans*, 506 F.3d at 1104; *Mangum*, 824 F.3d at 101–02; *Abdul-Malik*, 403 F.3d at 75–76; *Taylor v. Sawyer*, 284 F.3d 1143, 1149 (9th Cir. 2002); *Romandine*, 206 F.3d at 738; *McCarthy v. Doe*, 146 F.3d 118, 122 (2d Cir. 1998).

In 2012, the U.S. Supreme Court closed the gap in § 3584(a), holding that district courts have the inherent authority to order that federal sentences be served concurrently

---

[1] When § 3584(a)'s final sentence refers to "[m]ultiple terms of imprisonment imposed at different times," it means the situation described in the first sentence, where a second prison term is "imposed on a defendant who is already subject to an undischarged term of imprisonment."  *Setser v. United States*, 566 U.S. 231, 234–35 (2012).  Section 3584(a) does not address the situation here, where the federal sentence was imposed before the state sentence.

with anticipated state sentences. *Setser v. United States*, 566 U.S. 231, 237–39 (2012). Soon after *Setser*, U.S.S.G. § 5G1.3(c), which advises district court judges to make federal sentences concurrent with not-yet-imposed state sentences for related conduct, was added to the Guidelines. *See Olmeda*, 894 F.3d at 92–93 (describing history). The commentary to § 5G1.3(c) states:

> This amendment is a . . . . response to the Supreme Court's decision in *Setser* . . . . [It] reflects the Commission's determination that the concurrent sentence benefits of subsection (b) of § 5G1.3 should be available not only in cases in which the state sentence has already been imposed at the time of federal sentencing (as subsection (b) provides), but also in cases in which the state sentence is anticipated but has not yet been imposed . . . . By requiring courts to impose a concurrent sentence in these cases, the amendment reduces disparities between defendants whose state sentences have already been imposed and those whose state sentences have not yet been imposed.

U.S.S.G. § 5G1.3, Historical Notes, 2014 Amendments.

*Setser* and § 5G1.3 eliminated the pragmatic problem that originally led to the BOP's power to make concurrency determinations. Nevertheless, the BOP has continued to make concurrency determinations in cases where district courts have neglected to do so. *See, e.g.*, *Mangum*, 824 F.3d at 99 (deciding a 2016 challenge to the BOP's refusal to grant an inmate a *nunc pro tunc* designation that his federal sentence had started while he was in state custody). The district court in this case relied upon the BOP's ongoing practice of making concurrency determinations to justify its refusal to decide whether § 5G1.3(c) should apply to Lynn's sentence.

18

## III.

The BOP originally assumed the power to make concurrency determinations for defendants, like Lynn, who faced a later-imposed state sentence because § 3584(a) left a void that some district courts were forbidden to fill. Post-*Setser*, that void no longer exists, which brings the troubling implications of the BOP's practice to the forefront: The BOP is exercising a power that clearly belongs to the judiciary. Additionally, since the Guidelines have been amended post-*Setser* to include § 5G1.3(c)'s recommendation that defendants in Lynn's position should serve concurrent sentences, district courts have an obligation, as part of their mandatory consideration of all relevant Guidelines, to decide whether they will accept § 5G1.3(c)'s recommendation during sentencing. The district court did not do so here, and so I would reverse.

*Setser* squarely addressed whether the concurrent-versus-consecutive decision rests with the BOP or the judiciary. In *Setser*, a defendant was indicted for drug charges in both state and federal court. *Setser*, 566 U.S. at 233. Setser received his federal sentence first, and the district court ruled that his federal sentence would run concurrently with any state sentence he received for his drug charge, but consecutive to any future state sentence he would receive for a then-outstanding probation violation. *Id*. Setser appealed, arguing that the district court lacked the power to make that concurrency determination because the case fell into the above-described § 3584(a) gap. *Id*. at 234–35. Specifically, he argued that the § 3584(a) gap meant that any concurrency determination should be left exclusively to the BOP through its *nunc pro tunc* designation

19

process, as district courts lacked any power not explicitly granted by § 3584(a).  *Id*. at

235.  The Supreme Court disagreed:

> That is an odd parsing of [§ 3584], which makes no distinction between the district court and the Bureau of Prisons.  The placement of § 3584 does indeed suggest that it is directed at district courts—but *that is likely because Congress contemplated that only district courts would have the authority to make the concurrent-vs.-consecutive decision*, not because Congress meant to leave the Bureau unfettered.  Indeed, the Bureau already follows the other directives in § 3584(a).  For example, if the district court imposes multiple terms of imprisonment at the same time, but fails to address the concurrent-vs.-consecutive issue, the terms "run concurrently," [as provided by] § 3584(a), and the Bureau is not free to use its "place of imprisonment" authority to achieve a different result.

*Id*. at 237–38 (citations omitted) (emphasis added).  The Court went on to explain that, by

relying on the maxim of *expressio unius est exclusion alterius*, or the explicit mention of

one thing is the exclusion of another,

> Setser . . . suggests that, because § 3584(a) recognizes judicial discretion in scenario *A* and scenario *B,* there is no such discretion in scenario *C*.  But the same maxim shows much more convincingly why § 3621(b) [which grants the BOP the power to designate state prisons as a federal inmate's place of confinement] cannot be read to give the Bureau of Prisons exclusive authority to make the sort of decision committed to the district court in § 3584(a).  When § 3584(a) specifically addresses decisions about concurrent and consecutive sentences, and makes no mention of the Bureau's role in the process, the implication is that no such role exists.  And that conclusion is reinforced by application of the same maxim (properly, in this instance) to § 3621(b)—which *is* a conferral of authority on the Bureau of Prisons, but does not confer authority to choose between concurrent and consecutive sentences.  *Put to the choice, we believe it is much more natural to read § 3584(a) as not containing an implied "only," leaving room for the exercise of judicial discretion in the situations not covered, than it is to read § 3621(b) as giving the Bureau of Prisons what amounts to sentencing authority.*

*Id*. at 238–39 (second emphasis added).

20

While the *Setser* Court held that district courts have the authority to decide that a federal sentence should run concurrently with an anticipated state sentence, it stopped short of deciding that the BOP's decades-old *nunc pro tunc* designation process is itself unlawful. It did, however, express concern about giving sentencing authority to a federal agency. *Id*. at 239, 242 n.5. Such concern has been echoed by other Courts of Appeals. The Second Circuit, for example, has explained that "[a] separation of powers issue arises when the same branch of government that prosecutes federal prisoners determines concurrency in lieu of the judge." *Abdul-Malik*, 403 F.3d at 76; *see also Fegans*, 506 F.3d at 1104 ("[W]e agree with the Second Circuit that Congress should examine the [BOP's practice of making concurrency determinations] because it implicates important federalism and separation of powers concerns[.]"). I agree that the BOP's practice raises troubling separation-of-powers concerns.

IV.

Although district courts are not mandated to comply with the recommendations in the Guidelines, they still "must give due consideration" to any relevant Guideline policy statements and explain any deviation therefrom. *United States v. Engle*, 592 F.3d 495, 502–04 (4th Cir. 2010). Section 5G1.3(c) was a "pertinent Sentencing Commission policy statement" at Lynn's sentencing, so it should have been "take[n] into account." *Olmeda*, 894 F.3d at 93 (quoting *Cavera*, 550 F.3d at 188–89); 18 U.S.C. § 3553(a)(5) (2012) (listing "pertinent policy statement[s]" as a factor that sentencing judges must consider). However, while the district court acknowledged § 5G1.3(c)'s existence, heard

21

argument on it, and discussed its application at some length during the sentencing hearing, the district court ultimately decided to neither adopt nor reject the Guidelines' recommendation. Typically, this result would not be possible: When imposing a federal sentence, district courts necessarily decide whether to accept or reject the pertinent Sentencing Guidelines whenever they decide the length of a sentence. Section 5G1.3(c), however, uniquely provides an opportunity to make no decision at all because a district court's failure to rule in situations where § 5G1.3(c) applies creates no presumption one way or another regarding whether the prisoner's two sentences should be served concurrently. *See Mangum*, 824 F.3d at 101–02. The decision is simply left to the BOP.

The majority opines that *Setser* already acknowledged and condoned the very same failure to decide that occurred here, citing the footnote in which the Supreme Court states: "Of course, a district court should exercise the power to impose anticipatory consecutive (or concurrent) sentences intelligently. In some situations, *a district court may have inadequate information and may forbear*, but in other situations, that will not be the case." *Setser*, 566 U.S. at 243 n.6 (emphasis added). This language, however, was written before the U.S. Sentencing Commission adopted § 5G1.3(c). It does not change the district court's obligation to rule on each pertinent Sentencing Guideline.

Criminal sentencing has been entrusted to the judicial branch, and deciding whether multiple sentences should run concurrently is intrinsically a determination of the length of imprisonment. Such decisions should be made by the district court just like any other determination about the number of months that a defendant will serve. Therefore, the district court's failure to rule on § 5G1.3(c)'s applicability to Lynn's sentence punts

22

the determination on the length of his sentence to the BOP. That result is an inappropriate delegation of the courts' judicial power, and I must dissent.

## V.

Because U.S.S.G. § 5G1.3 is a pertinent Sentencing Commission policy statement, the district court was required to decide whether to adopt its recommendation that Lynn's sentences run concurrently. It erred in leaving that decision to the BOP. I therefore respectfully dissent.