**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4241**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TREVON BEASLEY, a/k/a Tre,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge. (1:17-cr-00223-GLR-3)

Submitted: June 29, 2020                                 Decided: August 19, 2020

Before HARRIS and RUSHING, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Marc G. Hall, LAW OFFICES OF MARC G. HALL, P.C., Greenbelt, Maryland, for Appellant. Robert Hur, United States Attorney, David Metcalf, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury returned a verdict finding Trevon Beasley guilty of conspiracy to participate in a racketeering activity, conspiracy to distribute controlled substances, conspiracy to use and carry a firearm in relation to drug trafficking, possession of a controlled dangerous substance, and six counts of distribution of a controlled dangerous substance. The district court sentenced Beasley to concurrent terms of life imprisonment on the racketeering conspiracy and the drug trafficking conspiracy counts, and 240-month terms on each of the remaining counts all to run concurrently with each other. Beasley appeals.

Baltimore City Police officers on patrol in a marked police car observed two men seated in a parked Honda Acura. As the police car neared the Acura, both men ducked down and hid from view. This action aroused the suspicion of the officers, who stopped their vehicle and walked up to the Acura. As the officers neared the vehicle, they detected the odor of marijuana. One officer knocked on the window and asked to speak with the occupants. The officers observed Beasley crouched in the backseat and Avery Hawkins lying on his stomach in the front seat. The officers opened the passenger door and ordered the men to exit the vehicle. With the car door open, one officer observed the butt of a handgun on the floor of the front passenger seat. The officers also discovered marijuana in the vehicle. While conducting a search incident to arrest, officers found in Beasley's pants pocket a key fob, which activated the vehicle parked behind the one in which Beasley had been a passenger prior to his arrest. Officers inquired whether that vehicle contained any drugs or guns. Beasley responded, "I don't know, it's not my vehicle." The officers called a narcotics K-9 to the scene and the dog alerted on all four doors of the vehicle. The

officers then conducted a search of that vehicle and discovered additional drugs. Beasley contends that the district court erred by denying his motion to suppress this evidence.

A search can violate an individual's Fourth Amendment rights only when he has a legitimate expectation of privacy in the location searched. *See Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018). A person "normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest." *United States v. Carter*, 300 F.3d 415, 421 (4th Cir. 2002). The person challenging the search bears the burden of establishing a reasonable expectation of privacy in the searched area. *United States v. Castellanos*, 716 F.3d 828, 833 & n.4 (4th Cir. 2013).

Rather than establishing an expectation of privacy, Beasley expressly disavowed ownership of the vehicle, saying, "I don't know, it's not my vehicle." Because he disclaimed ownership of the vehicle, the district court appropriately determined that Beasley lacked any expectation of privacy in the vehicle. *See United States v. Washington*, 677 F.2d 394, 396 (4th Cir. 1982) (denying motion to suppress evidence recovered from suitcase when defendant disclaimed any interest in suitcase, stating, "It's not my bag, I don't care what you do"). Accordingly, the district court did not err by denying his motion to suppress evidence recovered from the vehicle.

Next Beasley contends that the district court erred by denying his motion for a mistrial or issuance of a curative instruction when, although the parties agreed not to present evidence of the murder by Beasley's co-conspirator of a 3-year-old child caught in the middle of a gang shootout, this child's first name was mentioned on a recorded phone conversation, which was played for the jury. The district court declined to issue a curative

instruction, finding that such action would likely call attention to the reference and "make more problems." The court also denied Beasley's motion for a mistrial, determining that the mention of the child's first name, without more, did not raise any inference of prejudice to Beasley. The court noted that it was a single, isolated mention of a first name, not the full name, and there was no other identifying information, such as the age or gender of the person referenced or any circumstances regarding any death. Additionally, the court noted that Beasley was not a participant in the recorded conversation and that nothing in the reference implicated Beasley.

"We review a district court's denial of a motion for a mistrial for abuse of discretion." *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009). It is also within the district court's broad discretion whether to issue a curative instruction. *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008) (reviewing for abuse of discretion district court's denial of motion for mistrial and its decision regarding curative instruction). Our review of the record convinces us that Beasley cannot show prejudice by a single, isolated reference to the child's first name, which did not implicate Beasley in her death. We therefore conclude that the district court was within its discretion to decline to issue a curative instruction and in denying a mistrial.

Beasley also argues that the district court plainly erred by not sua sponte declaring a mistrial after a juror advised the court of an incident that occurred outside the courthouse. The juror explained that, as she walked toward her car after the end of the court proceedings, a man walked up very close behind her and said, "I'm gonna get a hit tonight. Oh yeah, I'm gonna get a hit tonight." The juror believed that he said it loudly so that she

4

would hear him. She advised the court that she felt uncomfortable and afraid. The juror reported that this incident would not affect her ability to be fair and impartial; she believed the incident was a security matter and not related to the case. The district court excused this juror from the jury based on her violation of the court's instructions to notify the court of any unusual incidents and not to discuss such matters with fellow jurors. The court also inquired of each of the other jurors whether they had heard of the incident and, if so, whether it would affect their ability to be impartial. Each of the jurors stated that the incident did not affect their ability to be fair and impartial.

We review the district court's decision as to whether to grant a mistrial for an abuse of discretion. *United States v. Zelaya*, 908 F.3d 920, 929 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 855 (2019); *see Arizona v. Washington*, 434 U.S. 497, 513–14 (1978) (noting the "great deference" owed to a trial judge's decision to declare a mistrial based on possible juror bias). Because Beasley did not move for a mistrial in the district court, our review is for plain error. *See United States v. Olano*, 507 U.S. 725, 731–32 (1993).

In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court held that a rebuttable presumption of prejudice arose from a third party's unauthorized communication with a juror during the trial. *Id.* at 228–29. However, the *Remmer* presumption is not to be "casually" invoked. *United States v. Baptiste*, 596 F.3d 214, 221 (4th Cir. 2010) (internal quotation marks omitted). Rather, to trigger the presumption, Beasley must show "both that an unauthorized contact was made and that it was of such a character as to reasonably draw into question the integrity of the verdict." *Id.* (internal quotation marks omitted).

5

Here, the "contact" was a juror hearing a man state that he was "gonna get a hit tonight" as she left the courthouse. The juror considered the statement to be a security issue for the courthouse that was not related to the trial. The trial judge made appropriate inquiries of each of the jurors as to their knowledge of the incident and whether it would affect their ability to be fair and impartial. Each of the jurors attested to their ability to be impartial. We conclude that the district court did not commit error—plain or otherwise—by declining to declare a mistrial. *See United States v. Smith*, 919 F.3d 825, 834–35 (4th Cir. 2019) (upholding district court's denial of a mistrial based on concerns of juror safety after receiving assurances from remaining jurors that they could be fair and impartial); *United States v. Jones*, 716 F.3d 851, 857 (4th Cir. 2013) (ruling that court may rely on a juror's assurance of impartiality if the court finds the juror credible).

Beasley next challenges his sentence, arguing that the district court erred by finding that he was a leader or organizer of criminal activity involving five or more people and consequently applying a four-level sentencing enhancement. U.S. Sentencing Guidelines Manual § 3B1.1(a) (2018). Whether a defendant held a leadership role is a factual determination that we review for clear error. *United States v. Steffen*, 741 F.3d 411, 415 (4th Cir. 2013). Two witnesses testified that Beasley and Terrell Plummer were the leaders of the Old York Money Gang. Based on this evidence, we discern no clear error by the district court in determining that Beasley exercised a leadership role and therefore imposing the four-level enhancement. *See id.*

Moreover, we conclude that any error in applying this enhancement is harmless because it did not affect Beasley's Guidelines range. *See* USSG, ch. 5, pt. A cmt. n.2;

6

*United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) (applying harmless error to Guidelines determination when it is clear from the record that "the district court would have reached the same result even if it had decided the [G]uidelines issue the other way" and "the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor" (internal quotation marks omitted)).

Beasley's final challenge is to the district court's application of the murder cross-reference in determining his sentence for the racketeering conspiracy charge. Beasley argues that the jury should have been required to specify which acts were reasonably foreseeable to Beasley. He also contends that the evidence was insufficient to support the district court's finding at sentencing that he committed the murder of Tyrone Servance.

Section 2E1.1 of the Sentencing Guidelines provides that the offense level for conduct related to racketeering activity is 19 or the offense level applicable to the underlying racketeering activity. The district court found that the underlying activity was first degree murder and applied the offense level of 43 provided in USSG § 2A1.1 (first degree murder).

This court reviews the factual findings underlying a district court's application of a Guidelines cross reference for clear error and its legal conclusions de novo. *United States v. Ashford*, 718 F.3d 377, 380, 383 (4th Cir. 2013). Sustaining the first degree murder cross reference requires the court to find by a preponderance of the evidence both that the defendant acted with malice and that the killing was premeditated. *United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003); *see United States v. Cox*, 744 F.3d 305, 308

(4th Cir. 2014) (providing that sentencing judge may find facts supporting Guidelines application by preponderance of evidence).

The murder cross-reference is appropriately applied in a RICO case based on the "reasonably foreseeable" conduct of coconspirator. *Zelaya*, 908 F.3d at 930. Here, on the special verdict form, the jury specifically found that first degree murder was reasonably foreseeable to Beasley in furtherance of the racketeering enterprise. This finding was sufficient to support the application of the cross reference to the first degree murder Guideline. *See United States v. Sharpe*, 193 F.3d 852, 872–73 (5th Cir. 1999) (upholding murder cross-reference against challenge that jury did not make specific findings regarding underlying racketeering activities).

Moreover, the district court made factual findings that Beasley murdered Servance. The court based these findings on the testimony of cooperating witnesses who testified that Beasley committed the contract killing of Servance. The court also relied upon cell site and GPS data, recorded jail phone calls, and evidence from the city's watch camera, which corroborated this testimony. We conclude that the district court's factual finding that Beasley committed the first degree murder of Servance is supported by the record and is not clearly erroneous. *See Ashford*, 718 F.3d at 383. Accordingly, the district court appropriately applied the cross reference to the first degree murder Guideline.

We affirm Beasley's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

8