**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4898**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAMAR LACOBLY ALSTON,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., Senior District Judge. (1:19-cr-00356-NCT-1)

Argued: January 28, 2021                                  Decided: March 1, 2021

Before MOTZ, DIAZ, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John Carlyle Sherrill, III, SHERRILL & CAMERON, Salisbury, North Carolina, for Appellant. Tanner Lawrence Kroeger, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jamar Lacobly Alston pled guilty to possession of ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The district court applied a cross-reference to the Sentencing Guidelines for attempted murder, U.S. Sentencing Guidelines Manual §§ 2A2.1(a)(1), 2K2.1(c)(1)(A), 2X1.1(c)(1) (2018), and sentenced Alston to 108 months' imprisonment. Alston contends that the district court erred in applying the cross-reference. For the reasons set forth within, we affirm.

I.

In the early hours of New Year's Day 2018, Alston and his friend, Jason Arnold, attended a celebration at Elks Lodge in Sanford, North Carolina. Surveillance cameras captured the following events.

On the dance floor, Alston spoke with Arnold for approximately 90 seconds. Arnold then headed towards the exit; Alston continued to the bar. While on his way there, Alston made eye contact with Arnold and patted the right pocket of his jacket. At the bar, Alston approached Joseph Roscoe, who was sitting with two women. Alston spoke to Roscoe for a few seconds and then hit him. Alston and Roscoe scuffled for approximately ten seconds before a security guard intervened and separated them.

The security guard ushered Roscoe away toward the exit. As he did so, Alston reached into his right pocket and ran toward Roscoe and the guard. Once Alston reached them, he pulled out a gun, leaned around the guard, and fired three shots. Alston ran out the door immediately, and was soon followed by Arnold.

2

Alston was charged and pled guilty to possession of ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). At sentencing, the district court applied the cross-reference for attempted first-degree murder. *See* USSG §§ 2A2.1(a)(1), 2K2.1(c)(1)(A), 2X1.1(c)(1). The enhancement increased Alston's total offense level from 15 to 33 and increased his Guidelines range from 24 to 30 months' imprisonment to the statutory maximum of 120 months' imprisonment. The district court sentenced Alston to 108 months' imprisonment. Alston timely appealed.

## II.

We review the factual findings underlying a district court's application of a Guidelines cross-reference for clear error and its legal conclusions *de novo*. *United States v. Ashford*, 718 F.3d 377, 380, 383 (4th Cir. 2013).

"In the event of a conviction for illegal possession of a firearm [or ammunition], USSG § 2K2.1(c) authorizes a district court to substitute the offense level for any criminal offense that the defendant committed or attempted to commit in connection with the possession of the firearm" or ammunition. *Id.* at 381. The relevant substitute offense here is attempted murder, as defined in 18 U.S.C. § 1111. USSG § 2A2.1(a). Section 1111, in turn, defines first degree murder, as relevant here, as a "willful, deliberate, malicious, and premediated killing." *See United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003).

Alston argues that the district court erred in finding by a preponderance of the evidence (1) that Alston acted with malice and (2) that the attempted killing was premeditated.

3

## A.

Malice aforethought "may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *Ashford*, 718 F.3d at 384 (internal quotation marks omitted). Whether a defendant acted with malice "must be inferred . . . from the whole facts and circumstances surrounding the killing." *United States v. Fleming*, 739 F.2d 945, 947 (4th Cir. 1984).

We have little doubt that Alston's conduct constituted a gross deviation from the reasonable standard of care. Alston fired a gun in the direction of two individuals while running at them in a confined space. From this, a factfinder could easily infer that Alston knew that his conduct could have caused death or serious bodily harm.

Further, even though, "[t]o prove malice, the Government does not have to show an intent to kill or injure," *Williams*, 342 F.3d at 356, in this case the Government presented considerable evidence that Alston did intend to kill or injure Roscoe. Alston instigated a fight with the victim and then chased after the victim while drawing his weapon. This evidence of intent — on top of the evidence of Alston's gross deviation from the reasonable standard of care — requires our conclusion that Alston acted with malice.

## B.

"Premeditation is a fully formed conscious purpose to kill." *United States v. Tillery*, 823 F. App'x 157, 161 (4th Cir. 2020) (per curiam) (quoting 40 Am. Jur. 2d *Homicide* § 44 (2007)). "[T]here is no requisite amount of time for premeditation to form." *Id.* "Indeed, it can form 'in a moment' and must exist only 'for such time as will allow the accused to

be conscious of the nature of the act he is about to commit and the probable result of that act.'" *Id.* (quoting 40 Am. Jur. 2d *Homicide* § 44 (2007)). *See also United States v. Abdullah*, No. 06-4970, 2007 WL 2046801, at *4 (4th Cir. July 13, 2007) (per curiam).

We find ample evidence of premeditation here. The surveillance video provides evidence that Alston arranged for Arnold to serve as a lookout. Before he instigated the fight with Roscoe, Alston looked at Arnold and patted the pocket from which he would later draw a gun. Alston then chased after Roscoe and the security guard, from one room to another, before shooting toward the victim. This evidence of planning provides more than sufficient support for the district court's finding that Alston's conduct was premeditated.

## III.

Because the district court's factual findings of malice and premeditation had ample support in the record, the judgment of the district court is

*AFFIRMED.*